UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAIGE M. MARINO,
    Plaintiff,

v.                                          CIVIL ACTION NO. 13-12533-MPK[1]
                                            (Consolidated with 13-12541-MPK)

UNITED STATES OF AMERICA,
    Defendant.

MEMORANDUM AND ORDER ON
<u>UNITED STATES' MOTION FOR SUMMARY JUDGMENT (#32.)</u>

KELLEY, U.S.M.J.

In 2011 Plaintiff Paige M. Marino and her family lived in military housing located at Base Cape Cod ("the Base"), formerly known as Otis Air Force Base, in Bourne, Massachusetts. On two separate occasions during the winter of 2011 Plaintiff slipped and fell behind her housing unit, suffering injuries. In these consolidated Federal Tort Claims Act ("FTCA") cases, it is alleged that Marino's injuries resulted from the negligence of the United States Coast Guard ("USCG") in failing to keep the

---

[1] With the parties' consent, these cases were reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

area clear of snow and ice.

Defendant United States of America seeks the entry of summary judgment in its favor, arguing that it owed Marino no duty of care for the removal of ice and snow. Rather, according to Defendant, as a tenant of USCG housing, it was incumbent upon Plaintiff, not the USCG, to keep the area clear.

The summary judgment motion has been fully briefed (##32, 33, 34, 35, 36, 37) and stands ready for decision.

I. The Facts

In large measure, the following facts are undisputed. Marino and her family lived at 5438B Lemay Avenue on the Base from July 2009 through July 2011. (#33 ¶ 1; #37A[2] ¶ 1.) The property in which the Marino family resided was military housing, owned and assigned to them by the USCG. (*Id.*) Plaintiff's husband, John Marino ("J. Marino"), a member of the military, was deployed to Kuwait and Afghanistan from May 2010 until May 2011. (#33 ¶ 2; #37A ¶ 2.) While he was deployed, Marino lived at 5438B Lemay Avenue with her daughter and sister-in-law. (*Id.*)

At the time the Marino family moved onto the Base, J. Marino executed a "Declarations/Statement of Understanding" acknowledging that "[he had] received a

---

[2] Docket #37A refers to Plaintiff's Response to Defendant's Statement of Facts.

copy of the Housing Manual USCG Air Station Cape Cod." (#33 ¶ 3; #37A ¶ 3.) J. Marino additionally acknowledged that he would "read this manual and assure that my dependents and I and guests occupying family housing will voluntarily comply with its provisions." (#33 ¶ 4; #37A ¶ 4.) Plaintiff looked through the Housing Manual USCG Air Station Cape Cod ("the Manual") that had been given to her husband on July 10, 2009. (#33 ¶ 5; #37A ¶ 5.) A copy of the Manual was kept in the Marino household the entire time they lived on the Base. (*Id.*)

The purpose of the Manual is to detail the rules and instructions pertinent to the occupants of family housing on the Base. (#33 ¶ 6; #37A ¶ 6.) The respective responsibilities of the occupants and the USCG for maintenance of the property were detailed in Chapter 4 of the Manual. (#33 ¶ 7; #37A ¶ 7.) Of particular note, Section 4.1 states: "Routine resident(s) responsibilities including the following: [S]now removal from assigned driveways, carports, walks and sidewalks (see also Section 6.2.1(3))." (*Id.*) Section 4.6.3 of the Manual delineates services provided by the USCG, which include snow plowing of streets and roads. (#33 ¶ 8; #37A ¶ 8.[3]) The division of labor regarding snow removal responsibilities is repeated in Appendix 2

---

[3] Marino admits that Section 4.6.3 identifies services provided by the USCG, but denies that it is an exhaustive list in that it does not include all of the USCG's duties and responsibilities. (#37A ¶ 8.)

3

of the Manual. (#33 ¶ 9; #37A ¶ 9.[4])

Plaintiff notes, and Defendant does not dispute, that USGC also has a general Housing Manual ("USCG Housing Manual"), the purpose of which is to describe policies and procedures for administration of the Coast Guard Housing Program. (#37A ¶ 6.)  The USCG Housing Manual, which is also applicable in this case, provides, *inter alia*, that "[h]ousing officers shall be aware of relevant safety programs and make every effort to safeguard members and housing units." (#37A ¶ 7.)

Defendant asserts that the USCG publishes biannual newsletters in the spring and fall that are mailed to each resident on the Base. (#33 ¶ 10.)  According to the United States, the Fall/Winter 2009 and 2010 issues of the newsletter published reminders to tenants that it was their responsibility to shovel driveways, carports, walks and sidewalks, and further advised that a salt/sand mixture was available for their use. (#33 ¶ 11.)  While Marino has a general recollection of seeing and reading the newsletters, she does not recall seeing, receiving or reading specifically the Fall/Winter 2009 and 2010 issues of the newsletter. (#33 ¶ 13; #37A ¶¶ 10-12.)

During her first winter on the Base, Marino's husband cleared the walkway and

---

[4] Plaintiff reiterates the qualification that Appendix 2 of the Manual does not include all of the USCG's duties and responsibilities. (#37A ¶ 9.)

carport area behind their housing unit. (#37B[5] ¶ 2.) In October or November of 2010 before the first snowfall of the season, Plaintiff spoke with Terry Krout, the Local Housing Officer at the Base, about snow removal. (#33 ¶ 13; #37A ¶ 13.) Krout told Marino that it was her responsibility to clear the snow from the sidewalks, parking lot and carport areas. (*Id.*) Marino asserts that this summary of their conversation is incomplete. (#37A ¶ 13.) According to Plaintiff, she went to Krout's office to request an access pass for a private snowplow operator to enter the Base to clear the snow and ice from her walkway and carport area at her own expense because her husband was deployed overseas and she suffered from a bad back. (*Id.*) Krout denied her request for the pass, purportedly stating "We have single mothers that manage to dig themselves out. You can too." (*Id.*) After her request for a pass was denied, Marino claims that she tried to hire someone on the Base to clear snow and ice from her walkway and carport area, but was unsuccessful. (#37B ¶ 10.)

On January 14, 2011, Marino was walking toward her vehicle which was parked in front of the building in a so-called "free" spot (a spot not reserved for a particular resident) when she slipped and fell on accumulated ice and snow. (#33 ¶ 14; #37A ¶ 14.) On February 1, 2011, Plaintiff fell again as she was pulling her trash bin

---

[5] Docket #37B refers to Plaintiff's Statement of Additional Facts. Defendant has not responded to these additional facts.

from the street to the fenced area designated for trash storage. (#33 ¶ 15; #37A ¶ 15.)

According to Marino, after her second fall, her husband called Captain David Throop, the commanding officer on the Base, to discuss his wife's situation. (#37B ¶ 19.) In response to that conversation, Throop called Plaintiff to inform her that he would be sending equipment over to help clear the snow and ice around her housing unit, and he then personally shoveled the sidewalk behind the Marino residence so Plaintiff would have a clear path to her car. (#37B ¶¶ 20, 21.) Shortly thereafter Marino also received a call from Krout who advised her that she could pick up an access pass for her outside snowplow driver to come on Base to clear her ice and snow. (#37B ¶ 22.)

## II. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of asserting the absence of a genuine issue

of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

III. Discussion

These consolidated cases are brought under the FTCA which provides, in part, that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." Title 28 U.S.C. § 2674. Pursuant to 28 U.S.C. § 1346(b)(1), the United States has waived sovereign immunity "for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Since any negligence in the cases at bar occurred on the Base in Massachusetts, the law of the Commonwealth applies. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006); *Hartel v. United States*, 139 Fed. Appx. 292, 293 (1st Cir. 2005); *Goldman v. United States*, 790 F.2d 181, 183 (1st Cir. 1986).

The Massachusetts Supreme Judicial Court has explained that: "To prevail on a claim of negligence, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 457 Mass. 234, 239-40 (2010) (internal

citation and quotation marks omitted); *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 463 Mass. 50, 54 (2012). "[T]he existence of some relationship between the governmental employee and the plaintiff to which state law would attach a duty of care in purely private circumstances is required under 28 U.S.C. § 2674." *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994); *McCloskey*, 446 F.3d at 267; *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997). Under Massachusetts law, whether a duty of care is owed is a question of law amenable to decision on summary judgment. *Fernandes v. AGAR Supply Co.*, 687 F.3d 39, 42 (1st Cir. 2012); *Go-Best Assets Ltd.*, 463 Mass. at 54; *Lev*, 457 Mass. at 240.

In Massachusetts, "[a]n owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. . . . This duty includes an obligation to maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *O'Sullivan v. Shaw*, 431 Mass. 201, 204 (2000) (internal citations and quotation marks omitted); *Dos Santos v. Coleta*, 465 Mass. 148, 154 (2013).

Defendant takes the position that under the terms of the Manual, it was Marino's responsibility to remove the snow and ice from the areas where she fell, and that Plaintiff was fully aware that it was her responsibility. From Defendant's perspective,

no duty of care was owed to Marino to clear the ice and snow from around her housing unit, so summary judgment should enter in favor of the United States.

While it may be true that Marino had a duty to clear ice and snow from the areas around her home, under Massachusetts law, Defendant owed Plaintiff a duty of reasonable care to maintain the housing unit and adjacent area in a reasonably safe condition. Moreover, under the USCG Housing Manual, housing officers specifically owe a duty to "make every effort to safeguard members and housing units." (#37A ¶ 7.)

On Marino's evidence, Prout, the housing officer on the Base, knew that J. Marino was deployed overseas and that Plaintiff was physically unable to shovel snow and ice. Armed with this knowledge, Prout denied Marino's request for an access pass for a snowplow operator to come on Base to clear the carport, driveway and sidewalks around her home. This denial effectively interfered with Plaintiff's ability to perform her obligation, particularly as she was unable to find a person whom she could hire on Base to plow the areas around her housing unit.

In all of these circumstances, when the snow fell and wintry conditions prevailed, Prout knew or should have known that the carport, driveway and sidewalks around the Marino home would not be cleared and a hazardous condition would result. The potential for serious injury from slipping on the accumulated ice and snow was

high. Since the USCG maintained the streets and roads on the Base with plows and other equipment, the burden on Defendant to address the hazardous situation was minimal. With his knowledge of the facts, as housing officer, Prout had a duty to "make every effort to safeguard" Marino and maintain the property in reasonably safe condition.

Having found that the Defendant owed the Plaintiff a duty of care, the Court need go no further.

## IV. Conclusion and Order

For all the reasons stated, it is ORDERED that United States' Motion For Summary Judgment (#32) be, and the same hereby is, DENIED. The Court shall schedule a conference to set a date for trial.

/s/ M. Page Kelley
M. Page Kelley
November 10, 2015                    United States Magistrate Judge